The motion should be granted, with ten dollars costs.

Motion granted.

---

THE FIRST NATIONAL BANK OF THE CITY OF BROOKLYN, Plaintiff, *v.* JOHN G. JENKINS, JR., FRANK JENKINS and EDWARD T. JENKINS, as Executors of the Last Will and Testament of JOHN G. JENKINS, Deceased, and JOHN G. JENKINS, JR., Defendants.

(Supreme Court, Kings Trial Term, August, 1911.)

Banking associations and corporations — Powers of banking associations and corporations — Power to obtain security for debts.
Bonds — Interpretation — Interpretation of conditions and recitals — Condition to sell securities and realize amount — Whether duty of obligor or obligee.

Where, through the agency of the president of a national bank, the bank acquired corporate stocks the purchase of which was *ultra vires* of the bank and resulted in great loss to it, and the president and his son executed a bond to the bank upon the condition that it should be void if within two years the bank should sell the stocks and realize therefrom their cost to the bank, such bond was equivalent to a covenant on the part of the obligors to sell the stocks at cost within two years on account of the bank; and the failure of the bank to sell the same within two years was

Supreme Court, August, 1911.     [Vol. 73.

not a failure to perform a condition of the contract and is not a defense to an action on the bond.

There being no agreement on the part of the bank to hold the stocks for two years, it was not *ultra vires* for the bank to accept the obligation to secure the loss which one of the obligors had, by violation of his duty, inflicted on the bank.

ACTION upon a bond.

Morgan J. O'Brien and Robert T. Wilson, for plaintiff.

Louis B. Bomeister, for defendants.

BLACKMAR, J. On the 25th day of June, 1907, the plaintiff, a national bank, owned about 8,564 shares of the capital stock of various railroad, banking and industrial corporations. These stocks had been purchased by the plaintiff at various times since February 7, 1898, through the agency of John G. Jenkins, Sr., who, during all such time, was a director, the president, and the controlling spirit of the plaintiff. They had cost $668,848.75 and, at the prices quoted in the market, showed an apparent loss of $262,953.75. These transactions were all *ultra vires* of the bank. Jenkins, the president, violated his duty in procuring the purchases and was liable to an action for damages to the full extent of the loss occasioned to the bank, except in so far as a portion of the claim against him may have been barred by the Statute of Limitations.

·· When matters were in this condition, the National Treasury Department, after an examination, required an immediate disposition of the stock by the bank. This the officers of the bank were loath to do in the state of the market; and, after much correspondence and negotiations, arrangements were made whereby Jenkins, the president, and his son, John G. Jenkins, Jr., executed and delivered to the bank a bond prepared by the Treasury Department in the penal sum of $536,000, conditioned to be void, if, within two years, the plaintiff should sell the said stocks and realize therefrom the full sum of $673,498.75, stated in the bond as the cost of said stocks. The Treasury Department withdrew its

demand for an immediate disposition of the stock; and the plaintiff thereupon held the stocks for the two years, during which time they could not be sold at cost, and then sold them for $444,771.75, making a loss of $222,077. Meanwhile, on March 12, 1908, John G. Jenkins, Sr., the president, died. This action is brought against the executors of the will of John G. Jenkins, Sr., and John G. Jenkins, Jr., to recover the amount of such loss.

The defenses opposed are that the bond was given without consideration; that the agreement regarding the disposition of the stock, of which the bond was a part, was *ultra vires* of the bank; that the plaintiff failed to perform the conditions of the agreement on which the bond was delivered, in that it did not sell the stocks within two years; and that, as to a large portion of this claim, the cause of action against John G. Jenkins, Sr., for damages was barred by the Statute of Limitations. A jury having been waived, the facts as above stated were stipulated and the case submitted to the court.

I think the cause of action pleaded is the obligation of the bond. Incidentally, facts are stated which, by a liberal construction, show or rather indicate that a cause of action at law existed on June 25, 1907, against John G. Jenkins, Sr., for damages caused by his violation of his duty as director and president. But these allegations are also relevant to a cause of action on the bond. I cannot assume that the pleader intended to violate the plain provisions of the Code of Civil Procedure regarding pleading by uniting two causes of action, one *ex delicto* against the estate of the decedent, and one *ex contractu* on a joint liability of the decedent and the other defendant. If this was the complaint, it was fatally demurrable. True, the objection that causes of action are improperly united is waived by failure to demur; but the defendants, having construed the complaint according to its obvious purport and interposed their answers, should not on the trial be met by the suggestion that another cause of action *ex delicto* against part of the defendants lurks in the allegations of facts apparently introduced as matters of inducement and explanation to a cause of action

properly stated *ex contractu* against all.   I shall, therefore, treat the case as an action on the bond.   This renders it unnecessary to consider whether such a cause of action for neglect of duty of a director of a national bank survives against his executors, or whether any portion of the claim is barred by the Statute of Limitations.

Section 1915 of the Code of Civil Procedure provides that a bond in a penal sum, containing a condition to the effect that it is to be void upon the performance of any act, has the same effect, for the purpose of maintaining an action thereupon, as if it contained a covenant to perform the act specified in the condition.   The bond in suit is peculiar. Usually, the condition is to be performed by the obligors; therefore, the provision of the Code that it is to have the same effect as a covenant to perform the condition is easily applied.   In the case at bar, the bond reads as if the condition was to be performed by the obligee.   The bond provides that the obligors, Jenkins, are held and firmly bound to the bank in the penal sum of $536,000, if the bank, the obligee, does not sell certain stocks at cost within two years. This peculiar wording probably resulted from the knowledge of both parties that one of the obligors was president of and controlled the action of the. obligee.   The parties contemplated that Jenkins, as president of the bank, would control the time of sale of the stocks; the delay in the sale was supposed to benefit both Jenkins and the bank; the real object was to fend off the Treasury Department; Jenkins signed the bond for that purpose and the bank accepted it because Jenkins so willed.   In the minds of the parties. therefore, the condition avoiding the bond if the bank sold the stocks at cost within two years was equivalent to a condition avoiding it if Jenkins sold the stock.   The bond must be construed for the purpose of maintaining the action as the statute requires, and it, therefore, is equivalent to a covenant on the part of the obligors to sell these stocks at cost within two years on account of the bank.   If the statute did not prescribe the rule of construction, I should think that the bond meant that the obligation was void if the bank was able to sell the stocks at cost within two years.   But the

statute does prescribe the rule and it must be followed. The obligors were entitled to two years' time to perform this covenant; and a prior sale by the bank would have released them from their obligation, on the familiar principle that, where one party to a contract voluntarily and purposely makes it impossible for the other to perform, such other party is released. The failure, therefore, of the plaintiff to sell within two years is not a failure to perform a condition of the contract and is not a defense.

As to the consideration for the bond, it is sufficient to say that the liability of John G. Jenkins, Sr., to the bank for violation of his duty in the purchase of these securities is a consideration sufficient to support any lawful contract to secure satisfaction to the bank.

The defendants claim that the bond is void as part of a contract *ultra vires* of the bank. Jenkins, the president, had involved the bank in the payment of $666,848.75, upon *ultra vires* contracts for the purchase of stocks. Whether such contracts had vitality enough to pass the title of these stocks to the bank, it is unnecessary to decide. Both Jenkins and the bank, in the contract which is the basis of the action, assumed that the bank owned the stocks. It was the duty of both to repair any loss occasioned by these illegal contracts. An immediate disposition of the stocks would have entailed a loss of upwards of $250,000. The bank accepted the obligation of Jenkins and his son in effect to pay the loss to the extent of $536,000, unless the stocks were sold at cost within two years. To sustain their point, the defendants assume that the bank agreed to hold these stocks subject to market fluctuations for two years. They then characterize this as "crass speculation." From this they stretch toward the conclusion that the bank had no power to agree not to sell the stocks, and that the bond given as a consideration of this promise is void. But I find no agreement on the part of the bank to hold the stock for two years. The only effect of selling within two years for less than cost would be to avoid the bond. The only consideration of that character suggested either in the bond or in the evidence is that the bank would not immediately sell. The considera-

tion for the bond was the existing liability of the defendant, Jenkins, and not any agreement, express or implied, not to sell for two years. I can see no reason why the bank could not accept the obligation of the president, Jenkins, joined in by his son. Neither can I see how the fact that the obligation is conditioned upon the failure to sell the stocks at cost within two years affects its validity. It would be strange if a man, who by his conduct as director had caused the bank a loss of upwards of $250,000 and who was liable for such loss, could escape liability by giving a bond to pay it, even if the bond gave him two years to make the loss good. This result, the defendants claim, flows from the application of a doctrine formulated by the courts and strictly enforced in the case of banks to protect the stockholders and depositors. They would use this doctrine to accomplish a result in direct conflict with its very purpose. But it is enough to say that it was not *ultra vires* for the bank to accept the conditional obligation to secure the loss which one of the obligors had, by violation of his duty, inflicted on the bank; and when the bond is read with the legal effect of a mere covenant, as prescribed in section 1915 of the Code of Civil Procedure, this conclusion becomes plainly obvious. I hold, therefore, that the defendants are liable on the bond.

I direct judgment for the plaintiff for the amount claimed with costs, and on the settlement of the findings I will receive any memoranda as to the allowance of interest and the date from which it should be allowed. My present impression is that interest should begin to run from the 25th of June, 1909, for the obligation on the bond did not arise until that date.

Ordered accordingly.